1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE E. F.,[1] | Case No. 2:18-cv-09905-AFM |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

In January 2015, Plaintiff applied for disability insurance benefits. Plaintiff originally alleged disability beginning July 1, 2007, but subsequently amended her alleged onset date to July 30, 2012. (Administrative Record ["AR"] 15, 61-62, 186-194.) Plaintiff's application was denied. (AR 111-116.) Thereafter, a hearing took

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

place before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 32-91.)

In a decision dated February 13, 2018, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine and arthritis of the left and right thumbs. (AR 18.) The ALJ assessed Plaintiff's residual functional capacity ("RFC") as including the ability to: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; push and pull 20 pounds occasionally and 10 pounds frequently; frequently operate hand controls; frequently handle and finger bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally be exposed to unprotected heights, moving mechanical parts; and frequently be exposed to extreme cold and vibration. (AR 22.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform her past relevant work. Accordingly, the ALJ found Plaintiff not disabled. (AR 25-26.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1.     Whether the ALJ erred in finding that Plaintiff did not suffer from a severe mental impairment prior to her last date insured (June 30, 2015).

2.     Whether the ALJ properly rejected Plaintiff's subjective complaints.

3.     Whether the ALJ properly rejected lay testimony.

4.     Whether the ALJ properly rejected the opinion of Plaintiff's treating physician.

5.     Whether the ALJ erred in determining that Plaintiff could perform her past relevant work.

///

///

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I.      The ALJ's non-severity finding

Plaintiff makes several arguments in support of her contention that the ALJ erred by concluding that she did not have a severe mental impairment prior to June 30, 2015. (ECF No. 25 at 5-9.) For the following reasons, Plaintiff's contentions lack merit.

####       A.      <u>Relevant Law</u>

At Step Two of the sequential evaluation process, the claimant has the burden to show that she has one or more "severe" medically determinable impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 148 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). An impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 20 C.F.R. § 404.1522; *see Webb*, 433 F.3d at 686.

In determining whether a claimant's mental impairment is severe, an ALJ is required to evaluate the degree of mental limitation in the following four areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. If the degree of limitation in these four areas is determined to be "mild," a claimant's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in her ability to perform basic work activities. *See* 20 C.F.R. § 404.1520a(c)-(d).

B.  The ALJ's decision

The ALJ found that Plaintiff's medically determinable impairment of depression caused no limitations in understanding, remembering, or applying information; no limitations in interacting with others; no limitations in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing herself. (AR 20). Because he found that Plaintiff's mental impairment caused no more than minimal limitation in her ability to perform basic mental work activities, the ALJ concluded that it was not severe. (AR 18-20.) In reaching this conclusion, the ALJ considered the following evidence.

In September 2010, Plaintiff underwent a consultative psychiatric evaluation by Stephan Simonian, M.D. (AR 19, citing AR 344-348.) Plaintiff told Dr. Simonian that she was laid off in September 2009 and was later diagnosed with hepatitis and diabetes. She had recently completed treatment with Interferon, and she was "feeling tired and rather anxious." (AR 344.) Plaintiff indicated that she had no past psychiatric history and had never seen a psychiatrist. (AR 345.) She reported a history of alcohol abuse, but had stopped drinking in January 2010. (AR 345.)

Dr. Simonian's mental status examination revealed normal speech, thought process, affect, thought content, intellectual functioning, memory, comprehension, abstract thinking, and calculations. (AR 346-347.) Plaintiff's mood "was somewhat anxious." (AR 346.) Dr. Simonian diagnosed Plaintiff with generalized anxiety

disorder with avoidant personality features. In Dr. Simonian's opinion, Plaintiff was able to perform both simple and complex job instructions, maintain concentration and attention on a consistent basis, maintain attendance and perform work activities on a consistent basis, and perform work without special supervision. However, he opined that Plaintiff was moderately limited in her ability to interact with supervisors, co-workers, and the public and moderately limited in her ability to adapt to the stresses common to a normal work environment. (AR 347-348.)

In October 2010, State Agency medical consultant F. L. Williams, M.D., reviewed the medical evidence and opined that Plaintiff's mental impairment moderately limited her ability to understand, remember, and carry out detailed instructions, but did not result in limitations in any other functional ability, including her ability to interact with coworkers, supervisors, or the general public. (AR 362-365.)

In July 2015, Plaintiff underwent a consultative psychiatric examination by Raymond Yee, M.D. Plaintiff reported feeling anxious and depressed. She told Dr. Yee that she took a "low dose" of Ativan (.5 mg) to help with anxiety. (AR 505-506, 508.) Plaintiff denied ever seeing any outpatient mental health professional and denied any psychiatric hospitalization. (AR 508.) Dr. Yee's mental status examination revealed that Plaintiff had good eye contact; a polite, cooperative, and friendly presentation; normal speech, mannerisms, and expressions; appropriate mood and affect; and no abnormalities in thought content. Plaintiff's fund of knowledge, ability to perform calculations, concentration, abstract thinking, and judgment were all intact. Plaintiff's memory was largely intact. (AR 19, 509-510.) Dr. Yee diagnosed Plaintiff with adjustment disorder with anxiety and depressive features, and alcohol abuse. (AR 510.) Dr. Yee opined that Plaintiff is able to perform simple as well as detailed, complex tasks; accept instructions from supervisors; interact with coworkers and the public; perform work activities on a consistent basis without special attention or supervision; maintain regular attendance in the

workplace; and deal with the usual stress that can be encountered in a competitive workplace environment. (AR 511.)

In August 2015, the State Agency medical consultant reviewed the record and opined that Plaintiff had no severe mental impairment. (AR 98-103.)

On January 13, 2017, Plaintiff was placed on a psychiatric hold. Plaintiff reported feeling destitute and suicidal. She explained that her father had died, she had no income, and her stepmother wanted her out of her home. (AR 545, 603.) Thereafter, Plaintiff received psychiatric treatment from April 2017 to August 2017. (AR 532, 538, 758-829.)

In making his Step Two finding, the ALJ afforded great weight to Dr. Yee's opinion. The ALJ reasoned that Dr. Yee's finding that Plaintiff had no mental limitations was consistent both with the record as a whole and with Dr. Yee's clinical examination results. (AR 19.) The ALJ also attributed great weight to the State Agency medical consultant's opinion that Plaintiff's mental impairment was not severe, reasoning that the opinion was consistent with the record and the consultant "had a strong understanding of the applicable Social Security rules and regulations when formulating this opinion." (AR 19.)

The ALJ observed that other than evidence that Plaintiff was prescribed Ativan, the record contained no evidence of any mental health treatment between July 30, 2012 (the date of alleged onset) and June 30, 2015 (the date last insured). He emphasized the absence of any treatment records showing that Plaintiff received psychotherapy, counseling, outpatient treatment, medical intervention, or other mental health services from a psychiatrist, psychologist, counselor, or mental health expert during the relevant period. The ALJ found that the absence of evidence of mental health treatment supported Dr. Yee's opinion that Plaintiff suffered no mental limitations. (AR 19.)

The ALJ gave little weight to Dr. Simonian's opinion. In addition to finding that opinion was not supported by the record, the ALJ found that Dr. Simonian's

assessment provided "no insight into [Plaintiff's] functional ability during the applicable period" because it reflected Plaintiff's condition in 2010 – long before the alleged onset date. The ALJ further noted that Dr. Simonian had not been able to review the records available at the hearing level. (AR 19.) Likewise, the ALJ gave little weight to the opinion of Dr. Williams because it pre-dated the disability onset date. (AR 20.)

Finally, the ALJ discussed the evidence of "significant mental issues after the period at issue" – namely, evidence that Plaintiff was placed on a psychiatric hold in January 2017 and that she received mental health treatment between April and August 2017. (AR 19, citing AR 662-685, 758-828.) The ALJ found that this evidence lacked relevance to Plaintiff's mental functional ability during the period at issue. (AR 19-20.)

C.    Analysis

First, Plaintiff argues that the ALJ erred in rejecting the 2010 opinions of Dr. Simonian and State Agency medical consultant Dr. Williams that Plaintiff had moderate limitations in one or more areas of mental function. (ECF No. 25 at 7-8.)

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198). Because Dr. Simonian's opinion was contradicted by the opinion of Dr. Yee, the ALJ was required to provide specific and legitimate reasons for rejecting it.

As set forth above, the ALJ provided several reasons for discounting Dr. Simonian's opinion. Among others, the ALJ found that Dr. Simonian's opinion lacked probative value with respect what limitations Plaintiff experienced due to her mental impairment during the period from July 2012 to June 2015. As Plaintiff

concedes, Dr. Simonian's opinion was based upon an examination he conducted in September 2010. Dr. Simonian noted that Plaintiff had no past psychiatric history and her present illness consisted of general anxiety stemming from having been laid off of work and undergoing treatment with Interferon. (AR 344-348.) The ALJ's conclusion that Dr. Simonian's opinion did not shed light upon Plaintiff's mental limitations nearly two years later was reasonable interpretation of the evidence. That is, nothing in Dr. Simonian's report or opinion suggested that Plaintiff's symptoms or limitations were part of an ongoing or progressive mental impairment. Indeed, the as the Ninth Circuit has explained, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (citing *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989)); *see also Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir. 1988) (medical opinion is not probative when it predates onset date). The ALJ considered Dr. Simonian's opinion and reasonably concluded that it failed to illuminate Plaintiff's mental limitations more than a year and a half later during the relevant period. Thus, the ALJ provided a specific and legitimate reason for rejecting it. *See Carmickle*, 533 F.3d at 1158, 1165 (finding medical opinions limited in relevance because they predated the alleged onset of disability by a few weeks); *Akbary v. Astrue*, 2012 WL 294908, at *7 (C.D. Cal. Jan. 30, 2012) (ALJ provided legally sufficient reason for rejecting physician opinion where opinion predated disability onset date and, therefore, was of limited relevance); *Ingham v. Astrue*, 2010 WL 1875651, at *4 (C.D. Cal. May 10, 2010) (it was within the ALJ's discretion to give discount treating physician opinion because report reflected medical opinion more than a year prior to alleged onset of disability). The foregoing conclusion is equally applicable to Dr. Williams's opinion, which was rendered in October 2010 and based primarily upon Dr. Simonian's report.

Next, Plaintiff argues that the ALJ erred in relying on Dr. Yee's opinion because his opinion that she has no mental limitations is internally inconsistent with

his diagnosis of "adjustment disorder with anxiety features and depressive features" and inconsistent with the GAF score he assessed – namely, a score of 55-60. (ECF No. 25 at 8; *see* AR 511.) Contrary to Plaintiff's assumption, however, Dr. Yee's opinion was not internally inconsistent. The existence of an impairment, diagnosis, or symptoms does not equate to a significant limitation in the ability to perform work activities. Rather, standing alone, a mere diagnosis is insufficient to demonstrate severity at Step Two. *See Carmickle*, 533 F.3d at 1164-1165 (ALJ did not err at step two by failing to classify carpal tunnel syndrome as a severe impairment where the medical record did not establish work-related limitations); *Draiman v. Berryhill*, 2018 WL 895445, at *7 (C.D. Cal. Feb. 13, 2018) (claimant's "diagnoses of Major Depressive Disorder and Generalized Anxiety Disorder are insufficient to demonstrate that she has a severe mental impairment" at step two).

Similarly, assigning a GAF score of 55 to 60 is not necessarily inconsistent with the conclusion that Plaintiff's mental impairment resulted in no significant limitations. *See Draiman*, 2018 WL 895445, at *7 (noting that "GAF scores have limited probative value at step two," and finding that plaintiff's GAF scores of 55 and 60 were insufficient to demonstrate impairment was severe at Step Two) (citing *McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir. 2008) ("The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorder listings.'") (quoting 65 Fed. Reg. 50746, 50765 (Aug. 21, 2000)); *see also Craig v. Colvin*, 659 F. App'x 381, 382 (9th Cir. 2016) (ALJ did not err in finding that the claimant did not have a severe mental impairment despite consistent GAF scores of 55).

Moreover, even if there was some inconsistency in Dr. Yee's report, it is the ALJ's province to resolve ambiguous evidence. *See Lingenfelter*, 504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to

reject."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that the ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within the treating psychiatrist's and examining psychologist's reports); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (ALJ is responsible for resolving conflicts and ambiguities in medical evidence). Thus, so long as the ALJ's interpretation of the evidence is rational – as it is here – the ALJ's decision must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff also argues that the lack of evidence of mental health treatment prior to June 2015 was not a "legitimate reason" for the ALJ to conclude that her mental impairment was non-severe. (ECF No. 25 at 9.) As support for her argument, Plaintiff relies upon *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996), but that case is inapposite. In *Nguyen*, the Ninth Circuit held that "not seek[ing] treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a doctor's] assessment of claimant's condition is inaccurate." *Nguyen*, 100 F.3d at 1465. The ALJ here did not rely upon the absence of mental health treatment from 2012 to 2015 as a reason to reject Dr. Simonian's opinion regarding Plaintiff's mental condition as of 2010. Rather, he relied upon the absence of medical evidence as support for the conclusion that her mental impairment was not severe during the relevant period – that is, from July 2012 through June 2015.

To the extent Plaintiff contends that the ALJ was not permitted to consider the absence of evidence of mental health treatment during the relevant period in reaching his conclusion, Plaintiff's argument is contrary to law. An ALJ may rely upon the absence of medical evidence to conclude that the claimant did not suffer from a severe impairment. *See Carmickle*, 533 F.3d at 1164-1165 (ALJ did not err in classifying a claimant's carpal tunnel syndrome as a "non-severe" impairment at Step Two where the only medical evidence addressing such impairment was a letter dated well before the claimant's alleged onset of disability); *Young v. Berryhill*, 2018 WL 5099669, at *2 (C.D. Cal. Oct. 18, 2018) *("The total absence of objective medical*

evidence of a severe medical impairment supported the ALJ's step two determination."); *Mohorko v. Berryhill*, 2017 WL 2938192, at \*3 (C.D. Cal. July 10, 2017) (ALJ did not err in finding plaintiff's depression and anxiety were non-severe where there was no evidence plaintiff received treatment from a mental health professional and where mental status examination showed plaintiff exhibited good mood and affect, intact memory, and good judgment and insight).

Finally, Plaintiff contends that the ALJ erred by finding that the 2017 psychiatric records were not relevant to her mental limitations prior to June 30, 2015. It is true that medical evidence post-dating the date last insured may be relevant in determining the claimant's pre-expiration condition. *See Taylor v. Comm'r of Soc. Sec. Admin.,* 659 F.3d 1228, 1232 (9th Cir. 2011); *Lester v. Chater,* 81 F.3d 821, 832 (9th Cir. 1996)). Plaintiff, however, does not explain how the evidence from 2017 is probative of mental limitations existing on or before June 30, 2015, and nothing in the records suggest that it is. Broadly, the records demonstrate that on January 13, 2017, Plaintiff was admitted to a psychiatric hospital due to suicidal ideation. She was discharged on January 25, 2017 with the following final diagnosis: "Anxiety disorder, unspecified; Cannabis use, unspecified, uncomplicated; Chronic pain syndrome; Major depressive disorder single episode, unspecified; Suicidal ideations." (AR 532.) According to the records, Plaintiff's suicidal thoughts had been exacerbated by her father's recent death (AR 538) and Plaintiff's major depressive disorder was "single episode." (AR 542.) Thus, the records are fairly construed as reflecting Plaintiff's mental state after a major event as opposed to the continuation of a prior existing condition. The remaining records indicate that Plaintiff began therapy at Didi Hirsch Mental Health Services in April 2017 and continued therapy through August 2017. Plaintiff identifies no retrospective opinion or any other treatment note which purports to relate to Plaintiff's mental impairment limitations on or before June 30, 2015. (*See* AR 759-828.) *Cf. Taylor*, 659 F.3d at 1232 (medical opinion was relevant to disability determination even though statement was dated

after the date last insured because the opinion concerned status of plaintiff's impairments and limitations *before* the expiration of his insured status); *Ward v. Colvin*, 2014 WL 4925274, at *3 (E.D. Cal. Sept. 30, 2014) (treating physician's opinion related back to relevant period because it was based, in part, on treatment during the relevant period). Thus, the ALJ's determination that the records were not relevant to Plaintiff's mental limitations during the relevant time period was a rational one. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (holding that ALJ properly did not address a social worker's post-insured-date opinion regarding a claimant's ability to work); *O'Neal v. Astrue*, 2010 WL 4386937, at *3 (D. Or. Oct. 29, 2010) (diagnoses of depression and anxiety made three years after date last insured failed to constitute relevant evidence that plaintiff suffered severe mental impairment prior to date last insured).

For the foregoing reasons, the ALJ did not err in finding that Plaintiff failed to establish that she had a severe mental impairment. *See Ruth G. v. Berryhill*, 2019 WL 134532, at *10 (C.D. Cal. Jan. 8, 2019) (a record of "cursory psychiatric treatment," with diagnoses of depression and a GAF of 65, was insufficient to demonstrate plaintiff suffered from mental impairment that significantly limited ability to perform basic work activity).

**II.    The ALJ's credibility determination**

Plaintiff contends that the ALJ erred in rejecting her testimony regarding her subjective symptoms and limitations. (ECF No. 25 at 10-17.)

A.    Plaintiff's Testimony

Plaintiff alleged problems using her hands, lifting, sitting, standing, and walking. She also alleged problems with memory, completing tasks, and concentration. At the hearing, Plaintiff testified that she had two surgeries on her right thumb – first in 2007 and the second in 2010. She had another surgery on her left thumb in July 2012, after which she stopped working. (AR 65-66.) Plaintiff developed back pain in 2012, but was unable to obtain medical treatment until 2014,

when she became eligible for Medi-Cal. (AR 39, 54-55, 69.) Plaintiff underwent surgery for her back in June 2015. She was placed in a convalescent facility for two weeks and then had a caregiver for three hours a day, five days a week. (AR 38-39, 74.)

According to Plaintiff, she has "pretty bad" pain in her left thumb and pain that comes and goes in her right thumb. (AR 68.) She is unable to lift more than five pounds due to weakness and cramps in her hands. Her impairment causes her to lose her grip and drop things. (AR 70.) Plaintiff also testified that she is unable to sit for longer than 20 minutes without needing to change positions or stand. She has difficulty standing or walking for "prolonged periods." (AR 70-72.) According to Plaintiff, she has trouble remembering, concentrating, and focusing. Although the trouble began in 2012, it became worse after her 2015 back surgery. (AR 66, 73-75; *see* AR 276.)

B.     Relevant Law

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *Trevizo*, 871 F.3d at 678 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider when making such a determination include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, unexplained failure to pursue or follow treatment, and inconsistencies in testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

C.    Analysis

The ALJ concluded that Plaintiff's impairments resulted in significant functional limitations. Nevertheless, he found that Plaintiff's allegations of more severe limitations than those assessed were not credible. The ALJ provided three reasons supporting his credibility determination: Plaintiff's subjective complaints were (1) not supported by the objective medical record; (2) inconsistent with Plaintiff's conservative treatment; and (3) inconsistent with evidence showing Plaintiff experienced improvement after surgery. (AR 24.)

1.    Objective Evidence

The ALJ summarized the medical record before concluding that although Plaintiff's physical impairments resulted in some functional limitations, the objective evidence did not support the severity of Plaintiff's allegations. (AR 24.) With regard to Plaintiff's back impairment, an October 2014 MRI of Plaintiff's lumbar spine showed herniation with erosion of the anterosuperior lumbar vertebrae, degenerative disc disease with bony articular facet hypertrophy and grade II spondylolisthesis, central disc extrusion with mild compromise of the lumbar spinal canal at L4-L5, and degenerative disc disease with a disc bulge at L5-S1. (AR 530-531.)

A January 2015 EMG study showed "a little bit of sensory conduction delay, probably not clinically significant" and "a little bit of denervation in the left leg distally." (AR 489.)

On June 15, 2015, Plaintiff underwent a lumbar laminectomy procedure. (AR 496-499.) Approximately six weeks later, on August 29, 2015, Warren Yu, M.D., conducted a consultative orthopedic evaluation. Plaintiff reported that she had

residual pain in her thumbs, but that her primary issue was her low back. Plaintiff reported that after her back surgery, the pain down her left leg improved, but she experienced residual numbness in her left foot. Her back pain also improved, although Plaintiff indicated that she still needed to "undergo rehabilitation." (AR 515.) Dr. Yu noted that Plaintiff moved freely in and out of the office and exam room without the use of an assistive device. She walked with a "mild limp" on the left side and was not able to toe or heel walk on the left side. Plaintiff was able to squat and rise. (AR 516.)

Physical examination of Plaintiff's cervical and thoracic spine was normal. Plaintiff's lumbar spine revealed reduced range of motion, moderate tenderness to palpation, but no spasm. Straight-leg raising was negative bilaterally in both the supine and seated position. (AR 517.) Physical examination of Plaintiff's thumbs revealed prominent MCP joint with no deformities, fusion of the right thumb, tenderness upon palpation, and decreased pinch strength bilaterally. Plaintiff was able to make full fists, and there was no atrophy of the intrinsic muscles. Her grip strength was 45 pounds bilaterally. Abduction and adduction of the thumbs were full, and range of motion of the fingers was full and painless. (AR 517.)

Plaintiff's left EHL and tibialis anterior motor strength was -5/5. Otherwise, her motor strength in the upper and lower extremities at 5/5. Dr. Yu found decreased sensation on the lateral aspect of the dorsum of the left foot and lateral aspect of the left leg, but sensation in the rest of the extremities was "well preserved." (AR 518.)

Dr. Yu diagnosed Plaintiff with (1) two months status post L4-L5 fusion with residual L4-L5 neuritis and (2) MCP arthritis in the thumbs that is status post metacarpophalangeal fusion on the right. (AR 518.)

With respect to Plaintiff's thumb impairments, the record contains evidence that Plaintiff underwent a release procedure of her right thumb in December 2010 to correct a prior surgery. (AR 375-377, 475-476.) In July 2012, Plaintiff underwent a repair procedure on her left thumb. (AR 381-400.) Treatment notes from a follow-up

visit with Raymond Raven, M.D. (the surgeon who performed Plaintiff's thumb surgeries) on October 2, 2012 revealed hypermobility of the metacarpophalangeal joint with insufficiency of the ulnar collateral ligament. Dr. Raven diagnosed Plaintiff with status post repair of ulnar collateral ligament with recurring instability and status post arthrodesis of the right thumb metacarpophalangeal joint secondary to failed ulnar collateral ligament repair. (AR 379.) He opined that the treatment options included observation or arthrodesis of the metacarpophalangeal joint, and recommended observation. He noted, "we can fuse the joint at any time. I will see her as needed." (AR 379.) The record contains no further follow-ups with Dr. Raven.

A nerve conduction study performed in January 2015 showed mild distal bilateral sural sensory conduction delay. (AR 485.)

The record also contains treatment notes from Herach Yadegarian, M.D., Plaintiff's treating physician. Dr. Yadegarian treated Plaintiff from April 2014 to February 2017. (AR 690-755.) As Plaintiff's counsel conceded at the hearing before the ALJ, Dr. Yadegarian's notes are "hard to read." (AR 43.) Plaintiff does not identify any clinical findings or imaging results within these treatment records. (*See* AR 43.) As best the Court can discern from the legible portions of Dr. Yadegarian's treatment records, Dr. Yadegarian treated Plaintiff for hypertension, hyperlipidemia, sleep disorder, anxiety disorder, and Hepatitis C. (*See* AR 698, 700, 704, 719-740, 743-757.)

The foregoing record supports the ALJ's conclusion with regard to each of Plaintiff's alleged limitations. With regard to Plaintiff's back impairment, the record contains the October 2014 positive MRI findings. In June 2015, Plaintiff underwent surgery. Notably, there is no clinical evidence suggesting that Plaintiff's back impairment severely limited her ability to stand, walk, or sit. Indeed, six weeks after surgery, Plaintiff appeared for an orthopedic examination and was able to ambulate without an assistive device and able to squat and stand. With regard to Plaintiff's thumbs, the objective evidence revealed that Plaintiff underwent surgery in 2010 and

2012. Otherwise, the clinical findings were minimal – i.e., a mild sensory conduction delay, decreased pinch strength, and mild tenderness on palpation. None of the clinical evidence suggests that Plaintiff suffers cramps in her hands precluding her from lifting or holding objects. To the contrary, the record indicates that her grip strength was 45 pounds bilaterally. Finally, as discussed in detail above, the evidence regarding Plaintiff's mental impairment revealed minimal findings at best (i.e., Plaintiff was "somewhat anxious").

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681; *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence to support claimant's subjective complaints constitutes substantial evidence in support of an ALJ's adverse credibility determination). Based upon the foregoing, the ALJ properly relied upon the lack of objective evidence as one reason to discount the credibility of Plaintiff's subjective complaints.

## 2. Conservative treatment

The Commissioner contends that the ALJ properly relied upon Plaintiff's conservative treatment in making his credibility determination. (ECF No. 26 at 7.) Although not entirely clear, the Commissioner's contention appears to be based upon the ALJ's finding that,

> while [Plaintiff] attended multiple doctor's appointments between 2012 and 2015, the treatment records from these appointments imply that [her] doctors had no overarching treatment plan nor that these doctors found that [Plaintiff] needed any specific treatment, aside from managed medication, for her impairments. In addition, [Plaintiff's] treating doctors prescribed medications to treat her impairments, including Soma, Vicodin, and Percocet.

(AR 24, citing AR 385, 831.)

The Commissioner is correct that an ALJ may properly rely on evidence of conservative treatment in support of his adverse credibility determination. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here, however, in addition to being prescribed narcotic pain medication, Plaintiff underwent back surgery and multiple thumb surgeries,[2] and the record suggests that another thumb surgery was contemplated. On this record, the Court is not convinced that the ALJ's characterization of Plaintiff's treatment as conservative is supported by substantial evidence. *See, e.g., Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment with narcotic pain medication, occipital nerve blocks, triggerpoint injections, and cervical-fusion surgery not conservative); *Diaz v. Berryhill*, 2018 WL 4998120, at *6 (C.D. Cal. Oct. 15, 2018) ("Surgery is generally not a 'conservative' treatment…."); *Mattis v. Berryhill*, 2018 WL 2077856, at *13 (C.D. Cal. May 1, 2018) ("Three back surgeries followed by continued pain management through strong opioid medications, is neither routine nor conservative treatment.").

### 3. Evidence showing Plaintiff had a good response to surgery

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Consequently, evidence of effective treatment may provide a specific, clear, and convincing reason to discount a claimant's subjective symptom testimony. *See Youngblood v. Berryhill*, 734 F. App'x 496, 499 (9th Cir. 2018).

Here, the ALJ found that Plaintiff's allegations of disabling pain and limitations was inconsistent with evidence that she had a good response to her thumb and back surgeries. As support for this conclusion, the ALJ cited the August 2015 orthopedic examination. (AR 24.) As discussed in detail above, Dr. Yu performed a

---

[2] Although Plaintiff's thumb surgeries were performed prior to the alleged onset date, this Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035; *Rodriguez v. Berryhill*, 2017 WL 8181028, at *2 (C.D. Cal. Dec. 29, 2017).

complete orthopedic evaluation, which revealed some positive findings – i.e., Plaintiff's lumbar spine had reduced range of motion, tenderness upon palpation, and residual neuritis at L4-L5; and her thumb had tenderness upon palpation and decreased pinch strength. Notably, however, Plaintiff was able to move freely in and out of the office and the exam room without the use of an assistive device, was able to squat and rise, was able to make full fists, there was no atrophy of the intrinsic muscles in Plaintiff's hands, her grip strength was 45 pounds bilaterally, and range of motion of the fingers was full and painless. (AR 517-518.) Based upon his examination, Dr. Yu did not find Plaintiff was restricted to the degree she alleged in her testimony. Rather, in Dr. Yu's opinion, Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently; frequently push and pull; walk and stand two hours in an eight-hour day; sit for up to six hours out of an eight-hour workday; occasionally bend, crouch, stoop, and crawl; occasionally climb ladders and work at heights; frequently use her hands for fine and gross manipulations; and did not need an assistive device. (AR 519.) Dr. Yu's clinical findings several years after Plaintiff's last thumb surgery and eight weeks after Plaintiff's back surgery supports the ALJ's conclusion that Plaintiff responded well to her surgeries.

Plaintiff argues that the ALJ misstated the record. In support of this contention, Plaintiff points to Dr. Yu's positive findings and assessment of MCP arthritis in the thumbs, as well as Dr. Raven's October 2012 treatment note reflecting "recurring instability" and a failed ulnar collateral ligament repair. (ECF No. 25 at 16, citing AR 379, 517-518.) The continued existence of a diagnosed impairment, however, does not contradict the ALJ's conclusion that those impairments improved after surgery to the extent that that they were not consistent with Plaintiff's allegations. Plaintiff also attempts to support her claim by relying upon Dr. Yadegarian's opinion regarding her functional limitations. But, as discussed below, the ALJ properly rejected Dr. Yadegarian's opinion.

Although Plaintiff offers an alternative interpretation of the evidence, the ALJ's interpretation was rational, and therefore, the Court must affirm it. *See Orn*, 495 F.3d at 630 (where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld).

## III. The ALJ's consideration of lay witness testimony

Plaintiff contends that the ALJ improperly discounted the third-party statement of Plaintiff's friend, Erica Jules. (ECF No. 25 at 17.) On April 9, 2015, Ms. Jules completed a Function Report – Adult – Third Party on a form approved by the Social Security Administration. Ms. Jules stated that she spent four hours a day, five days a week with Plaintiff. According to Ms. Jules, Plaintiff is couch/bed bound most of the day and night; is unable to "do buttons, zipper, and tie shoes"; needs help remembering to take her medication; cannot stand for more than 5 to 10 minutes without severe pain; cannot sit longer than 15 minutes; and "more or less" cannot leave her residence to participate in outdoor activities. Ms. Jules further indicated that Plaintiff has difficulty lifting, walking, standing, climbing stairs, squatting, sitting, kneeling, bending, and reaching. (AR 250-258.)

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). Friends and family members in a position to observe symptoms and activities are competent to testify as to a claimant's condition. *See Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). When rejecting lay witness testimony, an ALJ must give specific reasons germane to that witness. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Here, the ALJ considered Ms. Jules's third-party function report, but rejected it. The ALJ provided three reasons for doing so: Plaintiff did not present Ms. Jules as a witness so that she could be cross-examined; (2) Ms. Jules did not live with Plaintiff, so she had insufficient contact with Plaintiff to provide a probative account;

and (3) Ms. Jules's account conflicted with the medical evidence. (AR 25.)

The ALJ's first two reasons are likely inadequate bases for dismissing third-party testimony. *See Valentine*, 574 F.3d at 694 (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition); *Kelli C. S. v. Berryhill*, 2019 WL 1330890, at *4–6 (C.D. Cal. Mar. 25, 2019) (ALJ may not reject third-party statements merely because they were not given under oath where they were submitted on Social Security Administration's "Function Report – Adult-Third Party"). The ALJ's third reason, however, is germane.

Although an ALJ may not reject lay testimony simply because it is unsupported by medical evidence, he may reject testimony if it is *inconsistent* with medical evidence. *Compare Diedrich*, 874 F.3d at 640 (a lack of support from the medical evidence is not a proper basis for disregarding lay observations) *with Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.") (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *see Carlos L. v. Berryhill*, 2019 WL 1433723, at *8–11 (C.D. Cal. Mar. 28, 2019) (ALJ may reject lay testimony because it is inconsistent with medical evidence, but not merely because it is unsupported by medical evidence); *Guinn v. Berryhill*, 2018 WL 2670629, at *14 (C.D. Cal. May 25, 2018) (same). Here, because Ms. Jules's statements were inconsistent with the medical evidence – for example, evidence that Plaintiff was able to ambulate without difficulty during her orthopedic evaluation and was able to squat – the ALJ provided a sufficient reason for rejecting it. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ provided germane reason for rejecting third-party testimony on the ground that it was inconsistent with plaintiff's presentation to treating physicians during the period at issue).

## IV.    The ALJ's consideration of Dr. Yadegarian's opinion

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Dr. Yadegarian. (ECF No. 25 at 19-22.)

Dr. Yadegarian completed a Physical Residual Functional Capacity Questionnaire on March 16, 2016. He opined that due to severe low back pain and bilateral hand pain, Plaintiff is limited to: occasionally lift less than 10 pounds; stand and/or walk for less than two hours in and eight-hour workday; sit less than six hours in an eight-hour workday; perform handling only occasionally; never perform reaching or fingering. Dr. Yadegarian opined that Plaintiff required a cane for ambulation. In addition, he opined that she would miss work more than three times a month. (AR 686-689.)

A.  Relevant Law

The medical opinion of a claimant's treating physician is entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Trevizo*, 871 F.3d at 675. Where, as here, a treating physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Trevizo*, 871 F.3d at 675; *Ghanim*, 763 F.3d at 1160-1061; *Garrison*, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted).

B.  Analysis

The ALJ afforded little weight to Dr. Yadegarian's opinion. Among the reasons for doing so, the ALJ pointed out that Dr. Yadegarian failed to provide an explanation for his assessment and failed to cite specific supporting diagnostic or objective evidence.[3] (AR 24.)

---

[3] The ALJ also observed that Dr. Yadegarian did not review the record available at the hearing. (AR 24.) Because the Court finds that the ALJ provided a specific and legitimate reason for rejecting Dr. Yadegarian's opinion, the Court need not address the adequacy of this additional reason.

An ALJ may properly reject a treating physician's opinion that is conclusory or unsupported by clinical findings. *Chaudhry v. Astrue,* 688 F.3d 661, 671 (9th Cir. 2012); *Batson*, 359 F.3d at 1195. Reference to Dr. Yadegarian's functional assessment confirms the absence of any reference to supportive clinical or objective evidence. Plaintiff attempts to bolster Dr. Yadegarian's opinion by citing clinical findings like her MRI and her multiple thumb surgeries, which she believes support it. (ECF No. 25 at 21.) Nevertheless, Plaintiff does not contend that Dr. Yadegarian's functional assessment actually includes any clinical support for his opinion.[4] On this record, the absence of clinical findings supporting Dr. Yadegarian's opinion was a valid reason for the ALJ to reject it. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Rivera v. Berryhill*, 2017 WL 2233619, at *7 (C.D. Cal. May 22, 2017) (ALJ properly rejected treating physician's opinion on ground that it was "not probative or significant because it was not based on any apparent objective or clinical findings").

## V.  The ALJ's determination that Plaintiff could perform her past relevant work

Plaintiff contends that the ALJ erroneously concluded that she could perform her past relevant work. According to Plaintiff, the ALJ's hypothetical was flawed because it did not incorporate all of the limitations testified to by Plaintiff and Ms. Jules and assessed by Drs. Simonian and Yadegarian. (ECF No. 25 at 23.) This claim is premised upon Plaintiff's underlying contentions which the Court already has rejected. As a result, this separate claim presents nothing further to discuss.

---

[4] It is noteworthy that none of the objective or clinical findings Plaintiff contends support Dr. Yadegarian's opinion is from Dr. Yadegarian's treatment notes.

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: 11/19/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE